**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

Channel Source, Inc.
Plaintiff,

vs.

Estate of Roland Priebe, Unknown Heirs and Devisees of Roland Priebe, Alexander Priebe, Lucas Priebe, Alexander Lucas Technology, and unknown owners of Alexander Lucas Technology.

Defendants.

---

Case No.

# VERIFIED COMPLAINT

Plaintiff Channel Source, Inc. brings this action for trademark infringement and related claims against Defendants Estate of Roland Priebe, Unknown Heirs and Devisees of Roland Priebe, Alexander Priebe, Lucas Priebe, Alexander Lucas Tech, and unknown owners of Alexander Lucas Tech., and alleges as follows:

## THE PARTIES

1. Channel Source, Inc. was founded in 1998, to provide retail merchandising and marketing services to Cosmetic/Health and Beauty Care brands at top retail outlets. Channel Source is a Georgia corporation with a primary place of business located at 950 State Highway 114, Suite 160, Southlake, Texas 76092.

2. Upon information and belief, Alexander Lucas Technology has principle offices at 4947 North Troy Street, Apartment G, Chicago, Illinois 60625 or at 120 Oakbrook Center, Suite 707, Oakbrook, IL 60523.

3. Upon information and belief, Roland Priebe lived at 4947 North Troy Street, Apartment G, Chicago, Illinois 60625, prior to his death.

4. Upon information and belief, Roland Priebe served as the General Manager of Alexander Lucas Technology prior to his death.

5. Upon Information and belief, Lucas Priebe and Alexander Priebe were Principal Web and App Developers for Alexander Lucas Technology during the relevant time.

6. Lucas Priebe's current address is unknown. Upon information and belief, he previously resided at 4947 North Troy Street, Apartment G, Chicago, Illinois 60625.

7. Alexander Priebe current address is unknown. Upon information and belief, he previously resided at 4947 North Troy Street, Apartment G, Chicago, Illinois 60625.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Channel Source's United States federal claims pursuant to 28 U.S.C. §§ 1331 and 1338 and supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

9. Jurisdiction in the Northern District of Illinois is proper over Defendants because Defendants are located in this district, transact business in the district and/or have engaged in activities that subject Defendants to the jurisdiction of this Court.

10. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendants are located in this district, transact business in the district, the claims arose in the district, and a substantial part of the injury is felt in the district.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. Channel Source

11. At least as early as 1998, Reginald "Reggie" Lyon founded Channel Source.

12. Mr. Lyon saw a need to address a service gap in retail where manufacturers needed help getting inventory reset in stores without maintaining a regular workforce.

13. Mr. Lyon worked tirelessly, interviewing consumer product executives, learning numerous retailers' unique needs, and designing business strategies to improve sales and logistics.

14. Soon, the business became a premier provider of consumer product marketing and merchandising services.

15. Channel Source is the exclusive owner of all rights, title, and interest to the United States Trademark Registration No. 4,776,247, for CHANNEL SOURCE BRANDS REACHING CONSUMERS, in Class 35, for use in connection with business management consulting with relation to strategy, marketing, production, personnel and retail sale matters. See **Exhibit A**.

16. Channel Source also claims common law rights in CHANNEL SOURCE as a trademark based on its continuous use in connection with business management consulting with relation to strategy, marketing, production, personnel and retail sale matters since at least 1998.

17. Channel Source also claims common law rights in the CHANNEL SOURCE & Design logo shown below,

based on its continuous use in connection with business management consulting with relation to strategy, marketing, production, personnel and retail sale matters since at least 2004.

18. In addition, "Channel Source" has been Plaintiff's registered business name since at least 1998.

19. "CHANNEL SOURCE Marks" collectively refers to Plaintiff's Marks identified herein.

20. Since at least as early as 2001, Channel Source has owned channelsource.com and has owned channelsource.biz since at least 2002 (hereinafter "Channel Source's websites"). A screenshot of Channel Source's homepage is attached as **Exhibit B**.

21. Channel Source has used its websites as one of its primary ways of attracting new customers and workforce.

22. Channel Source prominently displays its Marks in conjunction with its marketing, advertising, and sales of its services.

23. Channel Source has expended a great deal of time and financial resources to build up customer recognition and goodwill related to its name and trademarks in the United States.

24. Channel Source has vigilantly and successfully policed and enforced its exclusive rights so as to prevent unauthorized use of the CHANNEL SOURCE Mark by competitors.

B. **Mr. Lyon and Mr. Roland Priebe's Relationship**

25. Roland Priebe and Reginald Lyon had established a friendship and business relationship that goes back to 1988.

26. In or about August 2010 Roland Priebe personally loaned Channel Source $12,500 with a scheduled pay back of $18,500.

27. Over the course of several years, Channel Source made payments to Mr. Roland Priebe for his loan.

28. Many of these payments were paid to Roland Priebe on a direct basis as well as at Roland Priebe's request, through accounts maintained by Alex Priebe and Lucas Priebe.

29. More than the balance and agreed payment of $18,500 has been paid to Roland Priebe.

C. **The Parties Business Relationship**

30. In approximately September 2011, Channel Source hired Alexander Lucas Tech, specifically Alex Priebe and Lucas Priebe, to develop a staffing portal website that Channel Source would use in recruiting and hiring new associates.

31. At the time, Alexander Lucas Tech was a new start-up company looking to design websites and develop apps.

32. Therefore, the Parties agreed that Alexander Lucas Tech would not charge Channel Source any fees for the project and, in exchange, Alexander Lucas Tech could direct its potential customers to the website to showcase Alexander Lucas Tech's technical capabilities and competencies. Thus Alexander Lucas Tech could use Channel Source's website as a case study and business reference.

33. Consistent with the Parties' understanding, on or about March 9, 2012, Defendants registered the domain channelsource.org, on behalf of Channel Source, to host the website portal project.

34. Defendants caused the channelsource.org domain to look nearly identical to Plaintiff's "regular" channelsource.biz website so that it would be a seamless experience for potential associates.

35. Separate from the website project, occasionally, Channel Source would hire Reggie Priebe, Alex Priebe, and/or Lucas Priebe for various jobs.

36. Throughout 2012, the Defendants continued to make revisions to the website for Channel Source.

37. Eventually, the Parties' relationship deteriorated and Defendants claimed that Channel Source did not pay them money that they were due. For example, in or around January

2013, Defendants threatened Channel Source and Mr. Lyon that Defendants would "put their grievances online" unless Mr. Lyon and Channel Source paid them money.

38. Throughout this time, Channel Source had paid Defendants in full for any work Defendants had performed for Channel Source and had continued to make loan payments to Roland Priebe.

39. On or around January 29, 2013, Defendants, without Channel Source's authorization, changed the channelsource.org website content to state:

> We're Hiring! But We Probably Won't Pay You! Just Like We Haven't Paid Our Webmaster or Accountant!
>
> CHANNEL SOURCE's owner, Reggie Lyon, owns a million-dollar home in the upscale Dallas suburb of Colleyville, yet has been unwilling to make payments on overdue debts to his webmaster and his accountant for the last eight months, and even refuses to respond to phone calls and emails.

See **Exhibit C**.

40. On February 5, 2013, Mr. Lyon, on behalf of Channel Source, contacted Defendants and informed them that he had lost a potential employee based on the false statements made on the channelsource.org website.

41. On or about February 13, 2013, the channelsource.org website returned to its "regular" content that mirrored the Channel Source main website.

42. On or about September 17, 2013, Mr. Lyon learned that Defendants had again caused the channelsource.org website to display false and misleading statements about Channel Source and Mr. Lyon. Mr. Lyon immediately informed Defendants that he was aware of their unauthorized use and demanded that they cease their unauthorized use of the CHANNEL SOURCE Marks and remove the false and misleading statements.

43. Around this same time, Mr. Lyons and Channel Source requested that Defendants transfer domain control to Channel Source. Defendants refused.

44. Defendants were not authorized to continue to run the website on behalf of Channel Source, yet they continued to do so.

45. As captured by Archive.org, as of October 2013, Defendants, without authorization from Channel Source, changed the content of channelsource.org to state:

> CHANNEL SOURCE is a leader in the innovative trend of not paying all of its staff and replacing them frequently. We believe in providing our clients with seamless service to execute their marketing and brand strategies. Our value-added support will enhance the shopping experience for both the retailer and the consumer. We view our people as our number one resource and create an environment that allows them to achieve their professional retail objectives.

See **Exhibit D**.

46. As captured by Archive.org, as of March 2016, Defendants, without authorization from Channel Source, changed the content of channelsource.org to state:

> We offer excellent compensation for CEO Reginald Lyon and to hell with anyone else.
>
> We're Always Hiring! It's Cheaper Than Actually Paying Our Old Staff!
>
> CHANNEL SOURCE is currently seeking trusting and gullible leaders that can work as merchandising associates, brand ambassadors and projects to service or nationwide clientele.
>
> CHANNEL SOURCE was supposedly a leader in the consumer products sales and retail merchandising industry. . . . We view gullible people as our number one resource and create an environment that allows them to achieve our professional profit-making objectives.
>
> This .org website is a companion website dedicated exclusively to telling the truth about trying to work with Reggie Lyon. No, this website is not a joke, just fair warning.
>
> What we offer: Excellent CEO Compensation . . . Keystone Cops-style Operations Management…Team Atmosphere (lots of grumbling)…

See **Exhibit E**.

47. In addition, Defendants also included Mr. Lyon's home address on the website along with his personal home phone number under a heading labeled "Real Home Office." See **Exhibit E**.

48. Several times Defendants demanded payment from Channel Source before they would agree to transfer the domain or take down the false statements or personal information. Channel Source did not pay and Defendants did not remove the offensive language or transfer the domain.

49. On information and belief, the harmful statements from the March 2016 remained published through Defendants' channelsource.org website until the domain expired in March 2017.[1]

50. A side by side comparison of the Defendants' website and Channel Source's website is shown below.

[1] After Defendants finally let the domain expire in March 2017, Plaintiff purchased the domain from GoDaddy and therefore the Plaintiff now owns the channelsource.org domain.

**Channel Source's homepage:**




**Defendants' imposter homepage:**



51. Defendants used the CHANNEL SOURCE Marks to harm Channel Source.

52. Channel Source lost clients and potential clients because of Defendants' web postings.

53. Channel Source lost potential employees because of Defendants' web postings.

54. Channel Source's business and reputation was harmed by Defendants' web postings.

D. **Channel Source's Attempts at Resolution**

55. Channel Source repeatedly asked Defendants to stop their malicious behavior and to transfer ownership of the domain name to Channel Source. Defendants refused.

56. Channel Source has sent two separate formal cease and desist letters to Defendants, dated March 10, 2014, and March 1, 2016. Defendants refused to transfer the domain or remove the offensive statements.

57. Channel Source also engaged in settlement discussions directly with Defendants to no avail.

**COUNT I: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**

58. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Channel Source is the exclusive owner of U.S. Trademark Registration No. 4,776,247 for CHANNEL SOURCE BRANDS REACHING CONSUMERS (the "CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark") as set forth above.

60. Defendants' used, in commerce and without authorization, Channel Source's CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark or confusingly similar

marks with competitive, identical, or closely related services to those sold by Channel Source's under its CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark. A side-by-side comparison of the two marks is shown below:

61. Defendants' unauthorized use in commerce of the CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark was likely to cause confusion, to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Channel Source. The consuming public was likely to believe that Defendants' services originate with Channel Source, are licensed, sponsored or approved by Channel Source, or are in some way connected with or related to Channel Source in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a).

62. Defendants had actual notice of Channel Source's CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark at least because Defendants formerly worked for Channel Source, and Channel Source repeatedly contacted Defendants and requested that they cease use of the Marks.

63. In addition, Defendants were on constructive notice of the CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark by virtue of Channel Source's federal trademark registration.

64. Channel Source had no control over the nature and quality of the services sold or advertised by Defendants. Any failure, neglect, or deficiencies by the Defendants in providing such services reflected adversely on Channel Source as the believed source or origin thereof, thereby hampering efforts by Channel Source to continue to protect its outstanding reputation for

high quality products and services, and could result in the loss of sales, all to the irreparable injury of Channel Source. Defendants' activities will continue to cause irreparable injury and damage unless restrained by this Court.

65. Channel Source has no adequate remedy at law for Defendants' violations of 15 U.S.C. § 1114.

66. In addition, upon information and belief, Defendants' use of the CHANNEL SOURCE BRANDS REACHING CONSUMERS Mark was willful and malicious and accordingly, Channel Source is entitled to treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

67. The goodwill and reputation of Channel Source's business in connection with its trademarks are of significant value and Channel Source will suffer irreparable injury should this Court allow Defendants' to begin use again to the detriment of Channel Source's trade reputation and goodwill. Because this irreparable injury cannot be adequately calculated or compensated solely by monetary damages, Channel Source seeks permanent injunctive relief pursuant 15 U.S.C. § 1116.

68. Defendants' activities and conduct have harmed and continue to harm Channel Source. Accordingly, Channel Source is entitled to recover its damages, Defendants profits received as a result of the infringing activities and conduct, and the costs of bringing this action pursuant to 15 U.S.C. § 1117.

**COUNT II: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT**

69. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. Defendants' use of the CHANNEL SOURCE Marks violated of 15 U.S.C. § 1125(a)(1)(A) which provides that any person who, on or in connection with goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Channel Source, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Channel Source shall be liable to Channel Source because Channel Source was or is likely to be damaged by Defendants' Acts.

71. Upon information and belief, Defendants' activities and conduct have been willful and deliberate, knowingly and intentionally designed to trade upon the significant goodwill of Channel Source's CHANNEL SOURCE Marks, to cause confusion or mistake, and to deceive the public as to the source or origin of the Defendants' services.

72. Defendants' false statements regarding Channel Source's services has reflected adversely on Channel Source as the believed source or origin thereof, thereby hampering efforts by Channel Source to continue to protect its outstanding reputation for high quality services, resulting in the loss of sales, all to the irreparable injury of Channel Source. Defendants' activities will continue to cause irreparable injury and damage unless restrained by this Court.

73. Channel Source has no adequate remedy at law for Defendants' violations of 15 U.S.C. § 1125(a).

74. The goodwill and reputation of Channel Source's business in connection with its trademarks are of significant value and it will suffer irreparable injury should this Court allow Defendants to begin use again to the detriment of Channel Source's trade reputation and

goodwill. Because this irreparable injury cannot be adequately calculated or compensated solely by money damages, Plaintiff seeks permanent injunctive relief pursuant 15 U.S.C. § 1116.

75. Defendants' activities and conduct have harmed and continue to harm Channel Source. Accordingly, Channel Source's is entitled to recover its damages, Defendants' profits received as a result of the infringing activities and conduct, and the costs of bringing this action pursuant to 15 U.S.C. § 1117.

**COUNT III: VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT**

76. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. On information and belief, Defendants registered and used the website domain channelsource.org in bad faith and intending to profit from the use of the CHANNEL SOURCE Marks by using a domain name that was identical or confusingly similar to Channel Source's trademark in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

78. Defendants had no bona fide intellectual property rights in the domain name, except to tread on Channel Source's goodwill and superior reputation. Defendants had no prior use of the domain name in connection with any bona fide offering of any goods or services other than those that were associated with Channel Source.

79. Upon information and belief, Defendants used the domain name intentionally to divert customers from Channel Source's online location. This use harms the goodwill represented by the CHANNEL SOURCE Marks with the intent to tarnish or disparage the mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

80. Upon information and belief, Defendants' had also acted in bad faith through their offers to transfer, sell, or otherwise assign the domain name to Channel Source for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services.

81. Upon information and belief, Defendants' activities had been willful and deliberate, knowingly and intentionally designed to trade upon the significant goodwill of the CHANNEL SOURCE Marks, to cause confusion or mistake, and to deceive the public as to the source or origin of its goods and services.

82. Channel Source has no adequate remedy at law for Defendants' violations of 15 U.S.C. § 1125(d).

83. Defendants' acts constitute unlawful cybersquatting. The goodwill and reputation of Channel Source's business in connection with its trademarks are of significant value and Channel Source will suffer irreparable harm should this Court allow Defendants' infringement to begin again to the detriment of Channel Source's trade reputation and goodwill. Because this irreparable injury cannot be adequately calculated or compensated solely by money damages, Channel Source seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

84. In addition, pursuant to 15 U.S.C. § 1117(d), Plaintiff is entitled to statutory damages of $100,000 per domain name.

**COUNT IV: ILLINOIS COMMON LAW UNFAIR COMPETITION**

85. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86. The foregoing acts of Defendants' to use and benefit from the goodwill and reputation earned by Channel Source and to obtain a ready customer acceptance of Channel Source's services constitute unfair competition, palming off, and misappropriation in violation of

Illinois common law, for which Channel Source is entitled to recover any and all remedies provided by such common law.

87. On information and belief, Defendants have made and will continue to make profits and gains to which it is not entitled in law or equity.

88. On information and belief, Defendants intend to continue its infringing acts unless restrained by this Court.

89. Defendants' acts have damaged and will continue to damage Channel Source and Channel Source has no adequate remedy at law.

**COUNT V: DISPARAGEMENT**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/2)**

90. Plaintiff hereby incorporates the allegations of Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. Defendants made false and demeaning statements regarding the quality of Plaintiff's services.

92. Defendants have willfully engaged in deceptive trade practices.

93. Defendants' acts have damaged Channel Source and as such, Channel Source is entitled to damages, costs, attorneys' fees, and injunctive relief.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff Channel Source, Inc. respectfully requests that judgment be entered in its favor and against Defendants, individually and collectively, such judgment providing:

A. Judgment be entered in favor of Channel Source and against Defendants as to each of the above counts;

B. Defendants pay damages incurred by Channel Source as a result of Defendants' infringement and unfair competition, including in the case of Defendants' violation of 15 U.S.C. § 1125(a), and treble damages or treble profits, whichever is greater;

C. Pursuant to 15 U.S.C. § 1117, that Plaintiff be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

   a. all profits received by Defendants from sales and revenues of any kind made as a result of its actions; and

   b. pursuant to 15 U.S.C. § 1117(d), statutory damages of $100,000 per domain name;

D. The Court issue a permanent injunction restraining, enjoining, and prohibiting Defendants and any of its officers, directors, agents, employees, representatives, successors, assigns, attorneys, licensees, distributors, and all persons in active concert or participation with Defendants to be enjoined from directly or indirectly using the CHANNEL SOURCE Marks or any confusingly similar designations, alone or in combination with other words, as trademark, service mark, domain name, or trade name to identify, market, distribute, advertise, promote, offer for sale, or provide infringing products or any related goods or services; otherwise infringing or diluting the CHANNEL SOURCE Marks; and continuing acts of false designation of origin or unfair trade practices herein complained of, or doing any acts that may cause Defendants' services to be mistaken for, confused with, or passed off as Channel Source's goods;

E. Defendants be required to deliver up for destruction all electronic files, literature, advertising, and other materials bearing the CHANNEL SOURCE Marks or any confusing similar name or mark or colorable imitation thereof; Defendants be ordered to pay costs of this action, including attorney's fees, incurred by Channel Source in connection with Defendants' unlawful acts;

F. Awarding punitive and exemplary damages as the Court finds appropriate;

G. Declaring that this is an exceptional case and awarding attorneys' fees to Channel Source;

H. Awarding interest, including prejudgment and post-judgment interest, on the foregoing sums; and

I. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims that may be tried before a jury.

Dated: May 19, 2017

BY: CHANNEL SOURCE, INC.

/s/Tiffany D. Gehrke
Julianne M. Hartzell (IL Bar No. 6275093)
Tiffany D. Gehrke (IL Bar No. 6299836)
Tron Y. Fu (IL Bar No. 6309042)

Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
Telephone: (312) 474-6300
Fax: (312) 474-0448
Email: jhartzell@marshallip.com
Email: tgehrke@marshallip.com
Email: tfu@marshallip.com

*Attorneys for Channel Source, Inc.*

**VERIFICATION OF COMPLAINT**

I, Reginald "Reggie" Lyon, am the President and CEO of Channel Source, Inc., the name Plaintiff in this action. I have read the foregoing Verified Complaint and am familiar with its contents. I declare under penalty of perjury under the laws of the United States that all of the factual statements contained in the foregoing Verified Complaint are true and accurate to the best of my belief and are based upon personal knowledge, except where expressly indicated otherwise.

Dated: 5/19/2017

Reginald "Reggie" Lyon
President and CEO
Channel Source, Inc.